Ibving H. Saypol, J.
The action is to annul the marriage upon the grounds of fraud in the defendant’s misrepresentation that he was a man of good personal habits and particularly that he was not addicted to the use of stimulants. Such an *812 action may be maintained at any time by the party whose consent was so obtained but it will not lie if it appears that at any time before commencement of the action the parties voluntarily cohabited as husband and wife with a full knowledge of the facts constituting the fraud (Civ. Prac. Act, § 1139). Final judgment shall not be rendered by default nor without proof upon the trial nor is the declaration or confession of a party alone sufficient but other satisfactory evidence of the facts must be produced (Civ. Prac. Act, § 1143). Before judgment by default at trial shall be granted, the plaintiff must prove that there has been no such cohabitation between the parties, as by section 1139 of the Civil Practice Act would bar a judgment of annulment (Rules Civ. Prac., rule 275). “ The primary consideration in every case is the materiality of the representation viewed in the light of all circumstances by the mind, not of the individual plaintiff but of an ordinarily prudent man.” (Shonfeld v. Shonfeld, 260 N. Y. 477, 481.) “ Not every fraud by reason of which the particular individual may have given consent to the marriage is an adequate basis for annulment. On the other hand, the fraud need not necessarily concern what is commonly called the essentials of the marriage relation — the rights and duties connected with cohabitation and consortium attached by law to the marital status.” (Shonfeld v. Shonfeld, supra, p. 479.) Shonfeld
(supra) was a case in which annulment was decreed by a closely divided Court of Appeals which reversed the lower courts. The plaintiff’s claim was that the defendant had deceived him in regard to promises of financial aid. The marriage was not consummated. The marriage in di Lorenzo v. di Lorenzo (174 N. Y. 467) was dissolved on the plaintiff’s proof that the wife who had engaged in premarital intercourse falsely represented to the man who married her that she had become pregnant and borne his child while he was away from the State. False representation regarding the use of narcotics (O’Connell v. O’Connell, 201 App. Div. 338) likewise goes to a fact so weighty and material that the courts can say that they would have influenced the consent of a man of average intelligence and prudence (see Beard v. Beard, 238 N. Y. 599; Minner v. Minner, 238 N. Y. 529; Svenson v. Svenson, 178 N. Y. 54). On the other hand Jones v. Jones (189 Misc. 145) rejects as not sufficiently material a claimed misrepresentation that the defendant did not drink hard liquor, coupled with condonation by continued cohabitation. So does Trefry v. Trefry (189 Misc. 1013) where the defendant concealed two convictions for intoxication, five and seven years before the marriage.
*813 At the opening of this trial, although the defendant had joined the issue, it was shown that before another part of this court, he had announced the withdrawal of his answer to permit the case to go by default. At the same time he made the unsworn statement that lie was an alcoholic. He did not attend the trial. The case was tried on three separate days, the plaintiff testifying on the first, her nephew and brother on the second and she again on the third day. The plaintiff is a mature woman formerly married happily and in business with her former husband for 27 years. On a visit to her summer home in Woodbourne, N. Y., while helping in her sister’s restaurant she met the defendant in November, 1954. On 15 or 20 social occasions together when she imbibed, she testified that the defendant refused saying “ I don’t drink.” There was no direct inquiry by her for Iris disclaimer that he was not addicted to intoxicating stimulants. They were married in March, 1955, took up residence in her New York City apartment on Bennett Ave., and lived happily until just a year later when in March or April, 1956, upon returning to the apartment, she found him drunk and disorderly. Testimony by the plaintiff that there was a telephone call to an unidentified person affiliated with an organization whose objective is the rehabilitation of victims of alcoholic addiction and also that the defendant was taken to a hospital for related treatment must be rejected as hearsay and thereby incompetent. The defendant returned to Bennett Ave. five days later. The plaintiff says she told him that their marriage was at an end for his concealment but they continued to live at the apartment although not as husband! and wife. Four months later he repeated his drunkenness and then she packed up and moved out. Documentary proof was received of three convictions of this defendant for public intoxication (Penal Law, § 1221) in 1951 and 1952, in courts near the place where the parties met and where the defendant had lived for 17 or 18 years. On the second day of trial the plaintiff’s nephew testified in corroboration of the plaintiff to the defendant’s premarital disavowal of the use of spirituous liquors. The plaintiff’s brother testified regarding his discovery of the defendant’s bad habits in December, 1956. On the third day the plaintiff was recalled. She changed her testimony as to post discovery relations between the parties. She had first said that their separate and independent occupancy of the same apartment had continued for four months, from his first drunken display in March, 1956 until the second in July or August, 1956. Evidently, to reconcile her story with her brother’s testimony, she now changed the time of the rupture to December, 1956. *814 Thus for 9 months, she testified, they were in the same 2% room apartment, the defendant’s occupancy limited to sleeping there alone and nothing else. He did not eat there nor was his laundry supplied.
Counsel suggests that it would be cruel and inhuman to compel the plaintiff to go through life bound by ties of marriage to an alcoholic, where it so clearly appears she was induced to contract such alliance by fraud and deceit. Compulsion there was none. The marriage was her own. While I am not satisfied that there was any misrepresentation, certainly none so material as to upset the contract for lack of consent, I prefer to rest decision denying judgment to the plaintiff for lack of proof that there was no condonation by refraining from voluntary cohabitation. Voluntary cohabitation after discovery there was, and accompanied by coitus is must be inferred. It would be a fraud on a court of equity to let it be accepted that this mature and apparently intelligent plaintiff suffered the strange and close relationship with this addict for so long a period after discovery without disclosure or notoriety. Reverting to' the asserted concealment, it seems hard to believe that in the small community in up-State New York where the troth was made and where plaintiff said the defendant was apparently known and respected that she could not and did not learn of his aberration.
Judgment will be entered for the defendant on the transcribed testimony of trial to be filed therewith.