Henry Epstein, J.
This is an action to annul a marriage. The plaintiff husband, age 33, married defendant in Las Vegas, Nevada, in April, 1955 when he was 31 and defendant, a grandmother, was over 60 years of age. Plaintiff knew she was a grandmother and does not seek to base his action on any misrepresentation of age. He claims defendant to have been guilty of “ bad personal habits ” unknown to him and that she was a narcotic drug addict, also unknown to him at the time of their marriage. These were the issues and no others.
Plaintiff met defendant in Europe in 1953. He pursued her for two years prior to their marriage, both in Europe and in this country. He knew of her prior unsuccessful marriages (three) as well as the gossip arising from rumors allegedly spread by defendant’s third husband. He knew of her circulatory disorders and other physical ailments before their marriage and was aware of the cosmetic operations to which she had submitted in Paris prior to and after their marriage; knew of her hospitalization for treatment for colitis, hemorrhoids, etc. The continuous train of letters from plaintiff to defendant, before and after marriage,— in fact right up to his leaving her — completely destroy any protestations of plaintiff that he was “ shocked ” to learn of her physical ailments in the fall of 1956.
The only “ bad personal habits ” to which plaintiff on the trial took exception were the “face lifting” and “placenta” operations — aimed at rejuvenation. Plaintiff made frequent use of both the Hotel Carlyle apartment and summer home of defendant, for himself as well as for a “ sick friend” during *71 his wife’s absence. He accepted her check for $2,000 sent to him to take care of his friend’s illness. He was told he could ask for more, if needed. This was as late as September, 1956, just two months before the departure of plaintiff. In fact, as late as the end of September, 1956, plaintiff wrote endearing letters to defendant, even referring to another prospective operation at which time he wished to be with his wife, despite his knowing this to be the same cosmetic treatment he now claims as a “ bad personal habit”. Plaintiff claims that sexual relations with defendant ceased in August of 1956. If so, the explanation may possibly be found, not in his aversion to defendant (vide the multitude of affectionate letters since then), but in his own difficulty. He admits having been examined by a Dr. Martin and having discussed possible “ impotence ”. He denied any treatment for such a condition.
The receipt by plaintiff of a request for power of attorney in the Nevada divorce action by defendant against him apparently “ triggered ” this action. The document bore the date November 12,1956, the same day plaintiff took his departure from defendant’s apartment and left his letter of definite break in relations. The coincidence of the date is in itself quite significant. Plaintiff testified to their celebrations of the “ monthly anniversary ” of their wedding date and chose precisely such date for serving his wife with the complaint in this action for annulment of their marriage. He even was present when the service took place. The alleged fraudulent misrepresentations, claimed by plaintiff to have induced him to marry defendant, or absent which he would not have sought annulment, are not supported by any credible proofs. Corroboration is wholly lacking, both in the plaintiff’s as well as the defendant’s testimony.
“ Mere non-disclosure as to birth, social position, fortune, good health and temperament cannot vitiate the marriage contract. The man and woman who marry take each other for better or worse, richer or poorer, to cherish in sickness or in health. If this be old-fashioned according to some moderns, it is still the hope and joy of the pledged loyalty ” (Lapides v. Lapides, 254 N. Y. 73, 80). (Emphasis supplied.)
The burden of proof upon a plaintiff in such an action demands much more than merely asserting one has been defrauded. It demands convincing proof of concealment of matters vital to the marital relationship.
‘ ‘ In any action, whether or not contested, brought to annul a marriage the declaration or confession of either party to the *72 marriage is not alone sufficient as proof, but other satisfactory evidence of the facts must be produced.” (Civ. Prac. Act, § 1143, subd. 2.) (Emphasis supplied.) No such proof is in the record here.
This court had before it the trial of “ framed issues ” and also the case proper, to be tried immediately after the framed issues were disposed of. There was no objection by either counsel to this stated procedure. On the rendition of the verdict and the failure of the jury to agree on one of the questions submitted, the court asked counsel for plaintiff if he wished to present additional evidence in the Special Term action. This was November 22. Counsel asked an adjournment to consider this. On November 27 plaintiff’s counsel asked a new trial on the framed issues and declined to proceed. The court then set the case for December 4, asking counsel to advise defendant’s counsel by December 2, and the court as well on a final decision with regard to proceeding with the trial. Plaintiff, after careful consideration, has decided that additional evidence would serve no useful purpose without resubmission to another jury of the “ framed issues ”. He therefore has refused to proceed and has left the record as it now stands, constituting in effect a default in the action for annulment after the framed issues had been tried.
The law would seem to operate against plaintiff’s contentions. This court may direct a verdict where a contrary verdict would be set aside. (Dalton v. City of New York, 283 App. Div. 1104.) The instant case is not one of the court’s disagreeing with the jury on the weight of the evidence. This is a case where a careful analysis of plaintiff’s evidence reveals that his case is insufficient as a matter of law. The scintilla rule of “ some ” evidence, however slight, no longer applies (Matter of Case, 214 N. Y. 199).
There would seem to be little doubt (plaintiff’s contention tó the contrary notwithstanding) that the court may dismiss a complaint after the verdict, or even after the discharge of the jury without a verdict. Prior rulings by the court may also be reconsidered on the renewal of the motion at the close of the entire case. The Fifteenth Annual Report of the New York Judicial Council for 1949 (pp. 245, 256-258), in a discussion of section 457-a of the Civil Practice Act, confirms this. This would also dispose finally of plaintiff’s argument that failure to move for a directed verdict bhrs a motion at the close for judgment notwithstanding the verdict.
*73 Arguments drawn from the ease of de Baillet-Latour v. de Baillet-Latour (301 N. Y. 428), with regard to alleged corroboration in that case fail when applied to the record here. There certainly is here no corroboration of plaintiff’s testimony when defendant denies the charges made by plaintiff. A denial cannot be considered such affirmative corroboration as considered by the Appellate Division in Newitt v. Newitt (282 App. Div. 81).
Butler v. Butler (204 App. Div. 602) stresses the “higher degree of proof ” needed in annulment actions than in ordinary cases.
This record is bare of any proof of premarital drug addiction, even from plaintiff’s testimony, other than what he says a doctor told him. Neither defendant nor the doctor corroborated plaintiff in this. The record is barren of proof which a court can accept within the statutory provisions and case rulings (de Baillet-Latour v. de Baillet-Latour, supra, pp. 433, 434, and dissenting opinion pp. 440-441). The record here is far less persuasive than that in the de Baillet-Latour case (supra). The evidence in the instant record would seem to fall squarely within the admonition of Judge Fboessel in that case: “ To allow a dissolution of the marriage upon the evidence disclosed by this record would tend to open even wider a door that is is already ajar for the indiscriminate granting of countless annulments where an absolute divorce could not be obtained on the statutory ground.” (P. 444.)
In the case just cited (de Baillet-Latour) the Court of Appeals divided four to three in affirming the judgment of annulment. The “requisite elements of the fraud” and the satisfactory proof of the requirements of section 1143 of the Civil Practice Act, found in the above ease (see p. 431 et seq.) are not found in the record here. The corroboration found in that case is wholly missing in this record.
Consideration of cases cited by plaintiff’s counsel warrants some further comment:
(a) In view of motions made by defendant’s counsel to dismiss at close of plaintiff’s case; and in view of motion both to dismiss and for direction of verdict at close of entire case, the decision in the Second Department in Buxhoeveden v. Estonian State Bank (279 App. Div. 1089) is not applicable.
(b) The record in the instant case furnishes no such corroboration, weak as it was, in the case of Newitt v. Newitt (282 App. Div. 81, supra). There is nothing in the case of Butler v. Butler (204 App. Div. 602, supra) which is violated in the court’s determination herein. The ultimate determination rested with *74 the court. If this court could set aside a verdict in answer to question 2-a, or could direct a verdict in respect thereof, then assuredly this court can, on a review of the entire record, grant a judgment, irrespective of the jury’s failure to agree on the subdivision of one of the questions submitted to it. Section 457-a of the Civil Practice Act says so in just so many words: “ If no verdict was returned, the court may direct the entry of judgment for the moving party.”
(c) The record in this case fails to reveal any “ other satisfactory evidence of the facts ” in addition to plaintiff’s declaration and therefore fails utterly to meet the statutory standard fixed by section 1143, particularly subdivision 2 thereof.
The court, in the instant case, in its charge and in its discussion with counsel outside the jury’s presence used the word “ advisory ” with reference to the jury’s answers to the questions submited. This in no manner affected the answers or the disagreement in respect of the questions submitted. The answers to the questions were conclusive on the issue of fact submitted, subject to the court’s power to set aside, if contrary to the evidence or the evidence is insufficient. Nothing contrary is found in Jackson v. Jackson (255 App. Div. 812). Thus the possible error (if it be such) in the use of the word “ advisory ” in the circumstances does not diminish either the effectiveness of the record nor impair the ultimate determination if the record fails of adequate proof on which to render a judgment of annulment (Sefranka v. Sefranka, 192 Misc. 676, 678).
Plaintiff moved that the' court designate a doctor to examine defendant to determine if evidence existed as to prior or present addiction to narcotic drugs, from 1953 to the present. Dr. Herbert Pollack, called by the court on plaintiff’s own motion, gave forthright testimony that no such evidence of drug addiction was present. A careful review of the record warrants only one conclusion; that plaintiff has not furnished any proof to support the charge of drug addiction prior to the marriage. His own testimony is barren of such proof and in the face of defendant’s denial there is an utter failure of any corroborative evidence. Neither the requirements of the statute nor of the common law are met.
At the close of plaintiff’s case the court denied defendant’s motion to dismiss and at the close of the entire case decision on the motion was reserved, as well as for direction of a verdict on the questions to be submitted. On question 2 (drug addiction) the court reserved decision at the close of the case and again after the jury had returned its answers and the one point in *75 question 2(a) on which they disagreed. Since on the record the court arrives at the conclusion on question 2, which it feels would have compelled the court to set aside an answer adverse to defendant, the court has adequate power now to grant judgment to defendant dismissing the complaint. This is upon the entire record and after due consideration of the questions submitted to the jury and its answers thereto, including the disagreement on 2(a).
This court feels that the records and the opinions of the courts in the following cases support the conclusion here arrived at: Woronzoff-Daschkoff v. Woronzoff-Daschkoff (303 N. Y. 506, 511-513); Lapides v. Lapides (254 N. Y. 73, 80); Smelzer v. Smelzer (147 Misc. 413, 415); de Baillet-Latour v. de Baillet-Latour (301 N. Y. 428, supra). The views of the Appellate Division in O’Connell v. O’Connell (201 App. Div. 338) and the facts therein are far afield from the instant record.
The proof called for by subdivision 2 of section 1143 of the Civil Practice Act is wanting here.
There remains one question on which plaintiff placed great stress at the trial and in his memorandum to the court. This concerns the admissibility of hospital records of defendant and testimony of defendant’s doctors who treated her. Plaintiff’s counsel argues that since defendant has sued plaintiff for divorce in Nevada where defendant has for some years been domiciled, and in her complaint in that suit, among other things, charges plaintiff with falsely accusing her of drug addiction — this court must rule that she has waived her privilege. Plaintiff further argues that since defendant in a preliminary motion in the proceedings prior to trial in this court has furnished a doctor’s affidavit that she is not addicted to narcotics, this constitutes a waiver of privilege on the trial as to her hospital records and medical testimony. This court ruled against plaintiff on these two contentions. Sections 352 and 354 of the Civil Practice Act and cases thereunder support the court’s conclusion. (Brown v. Brown, 65 N. Y. S. 2d 602, 603; Rubin v. Equitable Life Assur. Soc., 269 App. Div. 677; La Plante v. Garrett, 282 App. Div. 1096; 11 Jones” v. “ Jones”, 208 Misc. 721, 725; see, also, Hemminghaus v. Ferguson, 358 Mo. 476, re hospital records; Matter of Coddington, 307 N. Y. 181, 195; Hurd v. Republic Steel Corp., 275 App. Div. 725; Vanderhule v. Berinstein, 285 App. Div. 290, 295, 296.)
Plaintiff’s counsel took no exception to the court’s charge wherein the issues of personal habits and addiction to drugs were segregated; wherein the cosmetic operations were as a *76 matter of law declared by the court not to constitute ‘ ‘ bad personal habits ’ ’; wherein the court charged that1 ‘ the answers to those questions become advisory to the court in reaching its ultimate determination of what judgment it will render in this action for an annulment”. In fact, plaintiff’s counsel evidenced affirmative acceptance of the court’s charge on drug addiction, if such were known to plaintiff at any time prior to the separation of the litigants and severance of marital relations on or about November 12, 1956.
Motion for judgment dismissing complaint granted. Judgment signed.